UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JASON IBARRA,

        Plaintiff,

                                                  Civil No.: 22-cv-14067-WM

vs.

FUTURE MOTION, INC., a Delaware Corporation,

        Defendant.

_____

**DEFENDANT FUTURE MOTION, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF AND INCORPORATED MEMORANDUM OF LAW**

Defendant, FUTURE MOTION, INC. ("Defendant" or "Future Motion"), by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and the applicable Local Rules for the Southern District of Florida, hereby files this Motion for Summary Judgment on Plaintiff's, JASON IBARRA ("Plaintiff") claims against Future Motion and in support thereof, states, as follows:

**INTRODUCTION**

On February 12, 2021, Plaintiff Jason Ibarra was riding a Onewheel+ electric skateboard – which was designed and manufactured by Defendant Future Motion – when he fell from the board and broke his wrist. Plaintiff alleges that his Onewheel+ is defective in design, manufacture, and/or warnings, and/or that Future Motion was negligent. Because the proposed opinions of Plaintiff's experts are unreliable, inadmissible, and legally inadequate, Plaintiff cannot show either an unreasonably dangerous condition in the subject Onewheel+ nor demonstrate the requisite causal link. Expert evidence of a defect, breach of duty, and causation is necessary for Plaintiff to prevail

on all causes of action he asserted. Moreover, Plaintiff could not identify a single warning that he thinks would have prevented this incident. It would be pure speculation for a finder of fact to conclude that Plaintiff's accident resulted from a defect in his board, rather than his own operation of the board that day. Accordingly, the Court should grant Future Motion's Motion for Summary Judgment.

## BACKGROUND INFORMATION

Future Motion is the designer and manufacturer of the Onewheel+ electric skateboard. D.E. 1-2, ¶ 11. The board is generally comprised of a motor, battery, footpads, and electronic components that allow it to self-balance. See generally Curtis Decl., Ex. B. To operate it, a rider stands sideways on the board, as one would on a traditional skateboard. *Id.*, Ex. B at p. 12. To move the board forward, a rider leans forward. *Id.* at p. 13. To slow down or stop, a rider leans back. *Id.* The board is fully rider activated and the rider controls how fast or slow they are going. *Id.* Like most recreational activities, it takes time to become proficient, or to transition from a novice to higher skill. See Curtis Decl., Ex. C at p. 32:10-17. All Onewheels undergo extensive testing during manufacturing and assembly. See Curtis Decl., Ex. D at pp. 5-6.

Plaintiff purchased the Onewheel+ at issue second-hand via Facebook Marketplace approximately one month prior to the incident. Curtis Decl., Ex. C at p. 78:16-19. He rode the board nearly every day prior to the incident. *Id.* at p. 78:10-23. He felt adequately informed on how to operate the board. *See id.* at p. 141:6 – 142:3.

On the day of the incident, a gentleman was coming to Plaintiff's home to look at some scuba gear he had listed for sale. Curtis Decl., Ex. C at p. 84:7-25. While they were in his garage looking at the scuba equipment, the man asked him what the Onewheel was. *Id.* at pp. 86:18-87:3. Plaintiff offered to show him; he proceeded to unplug it, put on a helmet, and ride it out of his

garage. He accelerated quickly, traveling approximately 20 feet from the back of the garage to the front. Curtis Decl., Ex. C at p. 88:11-14, 90:6-14. 45. Plaintiff claims that as he accelerated toward the driveway, the Onewheel "nosedived" right at the edge of the garage. See Curtis Decl., Ex. C at pp. 86:18-87:3. Notably, there is a one-inch drop from the concrete garage floor to the paved driveway. Curtis Decl., Ex. H. Plaintiff is unable to explain why he fell; the board did not operate unusually in any way leading up to the fall. Curtis Decl., Ex. C at pp. 110:1-6, 114:20-22. Plaintiff's social media posts about the incident provide a different story. *See generally* Curtis Decl., Ex. E.

Plaintiff filed suit against Future Motion in November 2021 alleging causes of action for negligence and strict liability. Prior to filing suit, Plaintiff's wife rode the board after the incident with no issues. Curtis Decl., Ex. C at pp. 111:17 – 112:6. On May 12, 2022, Future Motion employee John "Jack" Mudd performed a test ride of Plaintiff's Onewheel+. Curtis Decl., ¶ 12. When Mr. Mudd test rode the board, he connected the board to his mobile application and noted that the board had been ridden for 409 miles and connected in "Elevated" mode. Curtis Decl., ¶ 13. Mr. Mudd experienced no problems with Plaintiff's Onewheel+ during the test ride. Curtis Decl., ¶ 14. During the test ride, Mr. Mudd rode the board a total of two miles, in all four modes, and noted that he felt pushback in every mode. Curtis Decl., ¶ 15.

Plaintiff identified two liability experts in this matter: Derek King and David Rondinone. *See* Curtis Decl., Ex. G. As set forth in more detail in Future Motion's *Daubert* Motion, their reports do not identify a specific defect which caused the subject incident, nor do they meet the standards of Federal Rule of Evidence 702.

Plaintiff cannot show the Subject Onewheel was defective in any way nor that Future Motion was negligent, and the Court should grant summary judgment in favor of Future Motion.

**MEMORANDUM OF LAW AND ARGUMENT**

A. **Standard of Review**

A party is entitled to entry of summary judgment where the record shows there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. *See Byrnes v. Honda Motor Co.*, 907 F. Supp. 1525, 1526 (S.D. Fla. August 16, 1995). Under Rule 56(a), "a party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a); *see also Bartolon-Perez v. Island Granite & Stone, Inc.*, 108 F. Supp. 3d 1335, n.1 (S.D. Fla. June 10, 2015). "The moving party bears 'the initial responsibility of informing the…court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Centeno v. I&C Earthmovers Corp.*, 970 F. Supp. 2d 1280, 1285 (S.D. Fla. September 6, 2013) (citations omitted).

When a court reviews a summary judgment, it views the evidence in the light most favorable to the non-moving party. *Fioretti v. CFI Mortgage*, 143 Fed. Appx. 293 (11th Cir. 2005). Nevertheless, "[t]he party opposing summary judgment may not simply rely on the pleadings or mere denials of the allegations." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10 (1986). Summary judgment is appropriate when a party shows that there is no dispute as to any material fact and only questions of law remain. *Centeno*, 970 F. Supp. 2d at 1285.

B. **Plaintiff's strict liability and negligence claims fail as a matter of law.**

In *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla. 1976), the Florida Supreme Court adopted the rule of strict liability set forth in Restatement (Second) of Torts § 402A. "In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's

4

relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages." *West*, 336 So. 2d at 87. Additionally, the plaintiff must demonstrate that the defect was present in the product when it left the manufacturer. *Humphreys v. Gen. Motors Corp.*, 839 F. Supp. 822, 827 (N.D. Fla. 1993) (citation omitted). Under a negligence theory, a plaintiff must also prove that there was a defect in the product due to negligence of the defendant. *See Oken v. Monsanto Co.*, 371 F.3d 1312, 1314 (11th Cir. 2004). A product may be defective by virtue of design defect, manufacturing defect, or an inadequate warning. *Liggett Grp., Inc. v. Davis*, 973 So. 2d 467, 475 (Fla. 4th DCA 2007).

    1. **Plaintiff lacks admissible expert evidence to prove a defect exists in the Onewheel.**

Under well-established Florida law, expert testimony generally is necessary to prove a product is defective. *Fagundez v. Louisville Ladder, Inc.*, No. 10-23131-CIV, 2011 U.S. Dist. LEXIS 147524, 2011 WL 6754089, at *2 (S.D. Fla. Dec. 22, 2011*), report and recommendation adopted*, 2012 U.S. Dist. LEXIS 192885, 2012 WL 12844303 (S.D. Fla. Jan. 19, 2012) (collecting cases); *Penick v. Harbor Freight Tools, USA, Inc.*, No. 19-CV-23134, 2020 U.S. Dist. LEXIS 209717, 2020 WL 6581606, at *5 (S.D. Fla. Nov. 10, 2020); *Eghnayem v. Bos. Sci. Corp.*, No. 1:14-CV-024061, 2016 U.S. Dist. LEXIS 196632, 2016 WL 4051311, at *6 (S.D. Fla. Mar. 17, 2016), *aff'd*, 873 F.3d 1304 (11th Cir. 2017) ("Federal courts applying Florida law have held that expert testimony is necessary to prove a product is defective."). Failure by Plaintiff to provide expert testimony to prove a defect is fatal to Plaintiff's claim. *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1225 (M.D. Fla. 2009).

Discovery has closed and Plaintiff has failed to produce admissible expert evidence demonstrating a product defect. As set forth in Future Motion's *Daubert* motion, Plaintiff's experts

lack appropriate qualifications to opine on source code, and lack scientifically valid, admissible evidence to support their opinions. Plaintiff's experts draw six conclusions, but none of them address a defect of any type in the Subject Onewheel. Curtis Decl., Ex. G at pp. 13-14. Plaintiff's experts make recommendations concerning possible alternative designs, but do not provide any evidence that such alternatives would have prevented Plaintiff's fall. Curtis Decl., Ex. G at pp. 13-14. Instead, Plaintiff's experts opine that "[g]iven the inherent errors *anticipated* in complex software code implementations, Future Motion should have been aware that even momentary low probability errors would be present . . . ." Curtis Decl., Ex. G at p. 3 (emphasis added). Essentially, they have stated that errors must exist based on statistical probabilities, but despite a full day and multiple software tools to review the code, Plaintiff's experts failed to point to a single actual defect or "bug" within the code. This is not automotive or medical device code that takes months to review and test. Plaintiff's experts could have purchased an exemplar board with the same firmware version at issue and tested how it behaved under various circumstances to try to replicate a purported software bug. They did not do that. Their opinions are speculative, untested, and should be excluded. Without competent expert testimony, Plaintiff cannot prove that the Onewheel+ contains an unreasonably dangerous defect and Plaintiff's strict liability and negligence claims fail as a matter of law.

    **2. Plaintiff Cannot Establish a Design Defect.**

With respect to a design defect claim, Florida law provides that a design defect is "a defect which renders the product unreasonably dangerous." *Liggett Grp.*, 973 So. 2d at 475. Plaintiff does not satisfy this burden by merely indicating that a manufacturer failed to produce a "fail-safe product." *Hernandez v. Altec Envtl. Prods., LLC*, 903 F. Supp. 2d 1350, 1359 (S.D. Fla. 2012) ("Products liability does not make the manufacturer an insurer of all foreseeable accidents which involve its

product . . . . An action is not maintainable in products liability merely because the design used was not the safest possible."); *Pinchinat v. Graco Children's Products, Inc.*, 390 F. Supp. 2d 1141, 1148 (M.D. Fla. 2005) ("[A] manufacturer does not have to make a product accident proof."). *Pierre v. Intuitive Surgical, Inc.*, 476 F. Supp. 3d 1260, 1269 (S.D. Fla. 2020). Florida has adopted both the consumer expectation test and risk utility test as alternative bases for proving a design defect. *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 512 (Fla. 2015). The defectiveness of a design, under either test, is determined based on an objective standard, not from the viewpoint of any specific user. *See Hobart Corp. v. Siegle*, 600 So.2d 503, 505 (Fla. Dist. Ct. App. 1992).

First, the consumer expectations test is taken from the Restatement (Second) of Torts § 402 (1965). "Under the consumer expectations test, a product is considered to be defective ' where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to [the consumer].'" *Cavanaugh v. Stryker Corp.*, 308 So. 3d 149, 154 (Fla. Dist. Ct. App. 2020) (quoting *Aubin*, 177 So.3d at 513). The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumer." § 402A cmt. g. The consumer expectations test "considers whether a product is unreasonably dangerous in design because it failed to perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner." *Cavanaugh*, 308 So. 3d at 154.

However, some products may be too complex for an ordinary consumer to have any expectations concerning their proper operation. *Force v. Ford Motor Co.*, 879 So. 2d 103, 109 (Fla. 5th DCA 2004); *Cavanaugh v. Stryker Corp.*, 308 So. 3d 149, 155 (Fla. 4th DCA 2020) (explaining that the consumer expectations test does not apply to complex products). In *Force*, the court held that an ordinary consumer could form expectations concerning seatbelts, but that

7

"[s]eatbelts seem to be one of those products on the cusp" of falling outside the consumer expectations test. *Id*. at 109-110. Perhaps the most significant problem with the consumer-expectations test is that an ordinary consumer of a complex product like an automobile "simply has 'no idea' how it should perform in all foreseeable situations, or how safe it should be made against all foreseeable hazards." *Soule v. General Motors*, 882 P.2d 298, 308 (Cal. 1994). Indeed, "a complex product, even when it is being used as intended, may often cause injury in a way that does not engage its ordinary consumers' reasonable minimum assumptions about safe performance." *Id*.

The consumer expectations test cannot be applied to the complex design of the Onewheel+. The design of the Onewheel+ involves technical and mechanical detail beyond the knowledge of any ordinary consumer. Plaintiff has conceded this point. His experts describe the Onewheel+ as having a "complex software code." Curtis Decl., Ex. G at p. 3. When asked about design changes to the Onewheel+, Plaintiff responded that he was "not an engineer." Curtis Decl., Ex. C at p. 142:18-24). But, even under the consumer expectations test, Plaintiff cannot demonstrate a defect in design. An ordinary consumer certainly could appreciate the risk associated with falling from a Onewheel. Plaintiff acknowledged that he understood that risk, and that falls could happen for many reasons unrelated to the performance of the product itself. Plaintiff cannot establish the Onewheel+ was defective in design under the consumer expectation test.

Second, a product is considered unreasonably dangerous under the risk utility test if the risk of danger in the design outweighs the benefits. *Pierre v. Intuitive Surgical, Inc.*, 476 F. Supp. 3d 1260, 1271 (S.D. Fla. 2020). The risk utility test balances six factors to determine whether a product's risk outweighs its utility to the consumer; if it does, it is negligently designed. *Crawford v. ITW Food Equip. Grp.,* LLC, 977 F.3d 1331, 1342 (11th Cir. 2020). The six factors are: (1)

likelihood/gravity of potential injury balanced against its utility, (2) availability of other safe products to meet the same need, (3) obviousness of the danger, (4) public knowledge/expectation of the danger, (5) adequacy of instructions and warnings, and (6) the ability to eliminate/minimize the danger without impairing the product or making it too expensive. *Id*. "[W]here a product is reasonably safe, the fact that there may be a better alternative design is not grounds for product liability." *Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1141 (Fla. Dist. Ct. App. 2002).

Even if Plaintiff's experts opinions were admissible, Plaintiff's experts fail to provide evidence that meet the six factors under the risk utility test. Most notably, there is no evidence regarding the likelihood/gravity of potential injury balanced against its utility, there is no evidence regarding the availability of other safe products to meet the same need, and there is no evidence regarding the ability to eliminate/minimize the danger without impairing the product or making it too expensive. More fundamentally, Plaintiff's experts fail to demonstrate that the failure to incorporate their proposed alternative designs rendered the board unreasonably dangerous. Plaintiff cannot prove a design defect under either the consumer expectation test or risk utility test, and thus his design defect claims under strict liability and negligence should be dismissed.

### 3. Plaintiff Cannot Establish a Warning Defect.

Under Florida law, "[a] product may be in a defective condition due to a . . . defective warning." *Brown v. Glade & Grove Supply, Inc.*, 647 So. 2d 1033, 1035 (Fla. 4th DCA 1994) (internal citations omitted). To establish a *prima facie* case of defective warning the plaintiff must prove: (1) the defendant is the manufacturer or distributer of the product at issue; (2) the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution; and (3) the failure to warn was the proximate cause of the plaintiff's

injury. *Thomas v. Bombardier Recreational Prods., Inc.*, 682 F. Supp. 2d 1297, 1300 (M.D. Fla. 2010). No plaintiff can claim that a defendant failed to warn him or her of a "risk" to which that person was already aware. *See Light v. Weldarc Co., Inc.*, 569 So. 2d 1302 (Fla. 5th DCA 1990).

Here, the undisputed evidence is that Future Motion warned and instructed Plaintiff on the safe and proper operation of the Onewheel+. Future Motion warned that ignoring safety warnings including pushback may result in loss of control, serious injury, or death. Plaintiff admitted he understood the owner's manual's instructions on pushback and warnings to heed pushback and that it was important to heed those instructions. Plaintiff acknowledged that there was a lot of information about safety available to him through both the owner's manual and the Onewheel app.

Even if Plaintiff were able to show that the various warnings through multiple mediums were not adequate, his claim for defective warning would still fail as he has not and cannot establish the allegedly inadequate warnings were the proximate cause of his injury. Plaintiff's experts draw conclusions in their reports that either non-ambiguous visual or audio warnings, which they even describe as redundant, "could easily be provided." Curtis Decl., Ex. G at p. 13; Curtis Decl., Ex. G at p. 31. But they do not opine that such warnings would have been triggered in sufficient time for Plaintiff to perceive and react to them. Plaintiff's ride lasted mere seconds over the distance of twenty feet, from the back of his garage to the front. They further note in their Rebuttal Report that the owner's manual does not contain a warning describing acceleration limitations. Curtis Decl., Ex. G at p. 31. However, Plaintiff's experts never state at any point that the warnings or absence of warnings was the proximate cause of Plaintiff's injury. Plaintiff testified he understood how to safely accelerate and that he felt equipped to safely operate the board. There is simply no evidence that additional warnings would have prevented this incident. Accordingly, Plaintiff cannot establish a viable warning defect claim.

### 4. Plaintiff Cannot Establish a Manufacturing Defect.

Under Florida law, to establish a claim for a manufacturing defect, Plaintiff must prove the product departed from its intended design such that it failed to perform as safely as the intended design would have performed. *See Citizens Property Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1363 (M.D. Fla. 2011). In contrast to a design defect claim, a manufacturing defect claim is based on "aberrational" defects and not those that occur throughout an entire line of products. *See Benitez v. Synthes, Inc.*, 199 F. Supp. 2d 1339, 1344 (M.D. Fla. 2002). Essentially, "the distinction is between an unintended configuration [a manufacturing defect], and an intended configuration that may produce unintended and unwanted results [a design defect]." *Id.*

"Manufacturing defects are generally limited to situations where something goes wrong in the manufacturing process and can be distinguished from other types of product liability claims such as design defects and inadequate warning defects." *Benitez v. Synthes, Inc*., 199 F. Supp. 2d 1339, 1344 (M.D. Fla. 2002). Further, Plaintiff must demonstrate that the manufacturing defect existed at the time it left the defendant's plant. *See Beauregard v. Continental Tire N. Am., Inc.*, 435 Fed. App'x 877, 879 (11th Cir. 2011).

Plaintiff has not offered any evidence that a manufacturing defect existed in the Subject Onewheel. Plaintiff's experts' reports discuss Onewheels generally and concerns or recommendations that would relate to all Onewheel products, but no opinions about a defective condition specific to the Subject Onewheel. There is no indication in their reports that the Subject Onewheel has any defect, let alone an "aberrational" defect. The inspection and test rides demonstrate that the Subject Onewheel conformed to Future Motion's design.

Further, the alleged manufacturing defect had to exist at the time the Subject Onewheel first left Future Motion's plant. Plaintiff purchased the Subject Onewheel secondhand and cannot show

that upon departing from Future Motion's plant, after thorough testing, the Subject Onewheel was defective. There is nothing in the record to demonstrate that a defect existed when it left Future Motion. There is nothing in the record to demonstrate that Future Motion departed from its standard practices in manufacturing the subject Onewheel. Plaintiff's strict liability and negligence claims premised upon an alleged manufacturing defect must be dismissed as a matter of law.

### 5. Plaintiff Cannot Establish That Any Alleged Defect Was the Proximate Cause of Plaintiff's Injury.

Proximate cause is a necessary element of strict products liability. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). "It is axiomatic that a mere possibility of causation is not enough, and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the Court to direct a verdict for the defendant." *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015 (Fla. 1984); *Reaves v. Armstrong World Indus., Inc.*, 569 So. 2d 1307, 1309 (Fla. 4th DCA 1990).

Even if Plaintiff were able to show through expert testimony that a defect exists, he has not met his burden to show that the alleged defect was a proximate cause of Plaintiff's incident. Indeed, Plaintiff is relying on the mere fact on that incident occurred, which is not substantial evidence of causation. The evidence in this case has established that the Subject Onewheel operated perfectly when it was test ridden as part of the manufacturing process and again when it was inspected after the accident. Furthermore, at no point in any of their three reports do Plaintiff's experts state or opine that any alleged defect with the Subject Board caused Plaintiff's injuries. Consequently, summary judgment is appropriate and should be granted.

### C. Plaintiff Cannot Present Any Evidence That Would Tend to Show That Future Motion Was Negligent And, as a Result, the Negligence Cause of Action Must Be Dismissed.

Even under a negligence theory, a plaintiff must first prove a defect and then show the

defect caused injury. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295 (11th Cir. 2005). As fully discussed above, Plaintiff cannot present any evidence that would tend to show that the Subject Onewheel contains a defect or any evidence that any alleged defect caused Plaintiff's injuries. Consequently, Plaintiff's negligence claim fails.

Further, under a negligence theory, a plaintiff must also prove an additional element, namely, that the defect in the product was due to negligence of the defendant. *Oken v. Monsanto Co.*, 371 F.3d 1312, 1314 (11th Cir. 2004) (noting that proving causation for negligence and strict liability claims requires proof of a breach or a defect and then proof that the specific breach or defect "alleged" caused the injury). Plaintiff cannot explain how Future Motion was negligent. There is no evidence of negligent conduct by Future Motion. Consequently, Plaintiff's negligence claim fails.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, Defendant, FUTURE MOTION, INC., respectfully submits that it is entitled to summary judgment as to Plaintiff, JASON IBARRA's claims, and for such other relief the Court deems just and proper.

## CERTIFICATE OF CONFERENCE

Per Local Rule 7.1(a), it is hereby certified that on Tuesday, January 21, 2023, counsel for Defendant, Kathleen Curtis, spoke by telephone with counsel for Plaintiff, Jeffrey Weiskopf, in a good faith effort to resolve the issues raised in the instant motion and was unable to do so.

## REQUEST FOR HEARING

Per Local Rule 7.1(b), Defendant Future Motion, Inc. respectfully requests oral argument. Oral argument would be helpful to the Court, because, inter alia, Plaintiff is making multiple claims

that each cover numerous issues and facts, for which oral argument on the issues would be beneficial to the Court. Defendants estimate that forty-five minutes per side would be required for oral argument.

<b><u>CERTIFICATE OF SERVICE</u></b>

I HEREBY CERTIFY that a true copy of the foregoing was served by electronic mail on January 31, 2023 on counsel or parties of record on the Service List below.

/s/ *Michael Holt*
MICHAEL R. HOLT
Florida Bar No.: 483450
E-mail: mholt@rumberger.com
docketingmiami@rumberger.com
mholtsecy@rumberger.com
LIGIANETTE CORDOVA
Florida Bar No.: 103271
E-mail: lcordova@rumberger.com
docketingmiami@rumberger.com and
lcordovasecy@rumberger.com
Rumberger, Kirk, & Caldwell, P.A.
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130-3037
Tel:  305.358.5577
Fax:  305.371.7580

KATHLEEN K. CURTIS
Pro Hac Vice
Email: kcurtis@nilanjohnson.com
Nilan Johnson Lewis P.A.
250 Marquette Ave. S., Suite 800
Minneapolis, MN 55401
Tel.: 612-305-7500

**SERVICE LIST**

Aaron A. Karger, Esq.
Florida Bar No.: 93226
Law Offices of Aaron A. Karger, P.A.
*Attorney for Plaintiff*
16211 NE 18th Avenue
Suite 200
North Miami Beach, Florida 33162
Tel: (305) 577-7772
Fax: (305) 602-9357
Email:
E-service:

Jeffrey Weiskopf
Halperin, Halperin & Weiskopf, PLLC
18 East 48th Street, Suite 1001
New York, New York 10017
Email: jweiskopf@halperinlawyers.com
Phone: 212-935-2600
Facsimile: 212-935-2390